to the second case set for argument and that is United States v. Walthall case number 22-50204. Mr. Coleman, yes, good morning. Ben Coleman for appellant John Walthall. Mr. Walthall did not ask his fellow inmate Antonio Rodriguez or the undercover officer to kill the federal officials. The government has abandoned a theory that he asked them to attempt to murder the officials and they concede that they cannot rely on a theory that he asked them to conspire to kill the federal officials. So really what they're left with at this point is a theory that he asked them to aid and abet the murder. And I think the easiest way to resolve this case, rather than going down the line of looking at the statutory language of section 373 and this record and perhaps more complicated issues, the easiest way to resolve this case is that the jury was not instructed on such a theory. And the government has not responded to that issue. And this court has made clear, even as recently as last week, that this court cannot affirm convictions based on a theory that the jury was not instructed on. Well, Mr. Coleman, if we take the evidence in the light most favorable to the government, as we have to for the sufficiency challenge, doesn't the evidence support the conclusion that he wanted somebody to murder the officials? Maybe not the people he was directly talking to, but the fictitious Columbians or someone he wanted to murder them, right? Yes, he expressed a desire that the officials be killed. And so the statute says, with intent that another person engage in conduct constituting a felony, so he intends for some other person to engage in murder, solicits commands, induces or otherwise endeavors to persuade such other person. So why isn't, you know, if he hopes that the Columbians will kill the judge and he talks to his inmate and says, you know, I want you to arrange for the Columbians to kill the judge, why isn't that otherwise endeavoring to persuade the killer to commit the crime? He's endeavoring to persuade by talking to the inmate who in turn will talk to the other person. Well, I mean, we have a few responses. One is I do think that when it says another person, it means an actual person, a real person, not someone that's a figment of your own imagination. But putting that aside, let's I don't I don't want to go down because you're a figment of your imagination. He this was not a figment of his imagination. He imagined that these individuals that he was listening, John and Rodriguez, were actually going to hire a real person to go out and kill somebody. Well, I don't I don't believe that's what the record shows. The record shows that he was going to arrange, however, so for the Columbian hitmen to come to the United States and then after the murder, the murders occurred, he was going to have the brother in law, the undercover agent, supervised payment through missing gold and Canadian trust accounts worth hundreds of millions of dollars. He was then going to have that payment made to them after the murders occurred. But to get back to Judge Miller's question, the what I think you're what you're saying is that he solicited, let's say, another person, a real person, either the Rodriguez or the agent. But again, it's to aid and abet the murder. I really think it's more like a conspiracy to murder is what he's saying is I want you to be involved in this plan where somebody else is going to go kill the officials. And if the government requested an aiding and abetting instruction, then maybe we'd be here on a different footing. But he hasn't. The underlying crime of violence was that he asked somebody else to kill these. That's what he was charged with, asking somebody else to kill these federal officials. And he didn't ask the two people that he supposed the government's theory was there were two people he solicited, and he didn't ask either of them to kill the federal. In fact, he acts the opposite. I'm confused by your other theory, and I don't want to divert. But I mean, while Walthall responded by telling Rodriguez that he didn't want John to do these things directly, but he wanted John to hire somebody that can be at a distance to ensure plausible deniability. I read that to mean he was asking John to go out and find somebody who could commit the murder. Maybe I'm. Yeah, well, what what happens is there are a few different things that are said, but I think ultimately what when he's having the conversation with John, the undercover, OK, and he's having the conversation with him, he's saying, like, look, I don't want to pay these guys ahead of time. We can't. You know, they're going to take the money and whatever it is. They're going to run up the bills. They're going to do whatever. So we need to pay them after everything. Payments is going to occur after the murders go down. It was the same thing. He was going to pay John the undercover after everything was done. Here's what his theory is that after everything is done, then everybody will get paid through this supposed 100 million dollars worth of missing gold that's going to be deposited into Canadian trust accounts. I mean, it's all crazy, but it's not even happening before the murders. So that really your position, just so I'm clear, because this was not what I'd understood it before. Your position is he never asked John or Rodriguez to go out and find somebody to. I actually think your argument would be stronger if this were the case. That's why I'm asking this. I thought your theory was he asked John and Rodriguez to go hire a third person that he didn't want any. He didn't want any his hands on it at all and that that's what was going to happen. But now what I'm hearing you say is, no, he'd arranged separately for this imaginative murder to happen. And he was going to. He'd only asked John and Rodriguez to, I guess, clean up the mess and and and make the payments. Am I am I understanding? Well, I mean, in his mind, how this is going to happen. I mean, he he he hasn't said that he went out and asked anybody. He thinks that there there's a 16 person hit squad from Columbia that's going to come to the United States. I mean, those are the only people that are ever referenced out of doing anything in his mind. Somehow these people are going to magically arrive in the United States to do this. I mean, he hasn't asked anybody to. He hasn't asked any Colombian hit men. He hasn't asked anybody to ask any Colombian hit men. Well, on that last point, doesn't the evidence support the inference that he thought that John and Rodriguez would arrange for the Colombian hit men to come? Well, so so I mean, so isn't that like he's using John and Rodriguez to otherwise endeavor to persuade the Colombian hit men to carry out the murder, right? Well, I don't think so, because John asks him, well, can I get can I get in touch with the Colombian hit men? And he says, no, the only thing I want you to do right now is to arrange for you to either shoot in a cell phone into the prison or orchestrate some laser based optic communication facility by by which we can have secure communications. So so you're I mean, your theory really does rise or fall on the fictional solicitation, because and I sorry, I just had not read the record this way. But the way you're reading it is that he never even solicited a real person to do the murder or to hire a murderer. Correct. But again, the government's theory, I mean, the way the case was instructed to the jury and argued to the jury, the government's theory is that he asked either Rodriguez or the undercover agent to kill the federal office. And that maybe that's why I'm relying on that. And I guess I guess to a certain degree, we have to accept that, right? Because that's what the jury heard. And there's evidence to support that. So even if your theory is viable, aren't we stuck with what the jury heard? Well, I guess I'm confused. I don't think there is evidence that he asked Rodriguez. That's your sufficiency of the evidence argument. Correct. He never asked them. In fact, he specifically told them, I don't want you to kill them. I want you to be removed by six to 12 layers of people that are I'm sorry, I don't think the government is saying that he asked them to kill him. The government's theory, I think, as you're saying, is that he asked John or Rodriguez to arrange the killing. Or to somehow participate in this conspiracy, which is why I think this is where the problem breaks down. In this case, if it's going to be properly, I guess, considered in the vicarious liability framework is it's a solicitation to engage in a conspiracy to murder. That's what I think best case scenario. That's really what we have here. But conspiracy to murder is not a crime of violence. Conspiracy to murder isn't aiding and abetting would be, but they didn't. They didn't push that theory. Correct. If they, I mean, arguably they could concede they could proceed under an aiding and abetting theory under the categorical approach, but they did not request the jury instruction on aiding and abetting. Well, OK, so you agree that there was no objection made to the jury instruction, though, right? Correct. But there was a rule 29 motion made. OK, but so we're reviewing this for plain error. No, de novo, because there was a rule 29 motion made at the end of the government's case in chief and the district court reserved ruling on it. OK, did you make? So here's what I was. And I want to hear from the government on this. So I'll raise it now. And I want to hear your response, because I'm not sure this is actually the argument you made. But the language that Judge Miller read otherwise endeavors to persuade. OK, that that's that's right. But who do you have to otherwise endeavor to persuade such other person? It seems to me that there's at least some argument that such other person has to be the person that you want to commit the murder that you can't use intermediaries. And I don't I don't know. I couldn't find any case law on this. But as I understand it, the jury instruction itself actually. I mean, if there's a problem here, there might be a problem with the jury instruction because the jury instruction does not say such other person. It specifically says any person. Correct. That's our that's our. But you never made that argument. Yes, yes, we did. You're under 29 in the rule. Twenty nine. No, not in the rule. Twenty nine. I was a trial lawyer, but not not in the rule. Twenty nine. Was there an objection on this basis? No. And I. So we have rule 29 de novo jury instructions, plain error. Oh, OK. OK. We're mixing it up. I'm focused on the jury instruction. Right. That's where we were. I have an argument that you should review the jury instructions de novo. But if you reject that, then jury instructions go in the plain error bucket. Sufficiency goes into de novo. I agree that the jury instructions were defective as well. And I think they were plainly defective. And based on this record, certainly the third and fourth prongs would be satisfied because this this record is a mess. And the jury certainly could have found in favor of Mr. Walthall if if if they were correctly instructed that he had to. The person that he actually solicited is the one that had to directly engage in the violent conduct. So at a very least, as our default argument, we think the court should reverse for instructional error. So didn't the Seventh Circuit address this issue? And I know the Seventh Circuit case in U.S. v. White is not binding on us, but I think it addresses this exact point, which is that a specific person to person request is not required. That it doesn't really matter anymore after the words come out of your client's mouth, whether or not there is an action that is requested or made by the person being solicited to coordinate or organize. So maybe talk to me about why you think White doesn't address this issue. Well, I think White is different in that what the defendant did in that case is he like sent out a blast like I want you guys to kill this juror or something like that. So he was he was making a direct request for somebody to kill the juror. So it would it would it would be like here, I guess, if Mr. Walthall actually sent out a request to 10 different people or just throughout the entire prison said, I want you all to kill these people. But that's not what he did here. The only people that he actually spoke to, he told them, I don't want you to kill them. I don't want you to do the actual act, but I want you to coordinate it, to oversee it, to have this intermediary role. It doesn't really matter if those are not the individuals. As I read White, that that doesn't sort of somehow remove the, you know, intent, which is the subject of the first clause that Judge Miller was talking about, which is any situation where a person seriously seeks to persuade another to engage. In criminal conduct, I mean, that sort of falls within the ambit of that language. Right. And I I mean, I think that look to such other person. I think it means that the person that you're soliciting, they have to participate directly in the violent conduct. That's what I think that language means. Your position would be in White because I was interested in White. Your position would be in White. That actually happened because he did solicit a whole bunch of people through the email blast. And some one of those individuals he expected would commit violence. We didn't know which person, but at least the communication happened. But then what about our decision in Stewart where, if I remember that correctly, Stewart asked somebody, I think it was Weiss, to arrange the murder. And the idea was that Weiss would not commit the murder himself, but he would have his brother-in-law do it. And the brother-in-law was fictitious. But we upheld the conviction there. So what's your answer to that? Well, I think there are a few answers. One is factually what the defendant did in that case is he first actually asked, was it Weiss? I think it was Weiss. He first actually asked Weiss to do the killing. And then Weiss said, well, I'm going to get my brother-in-law involved as well. So he actually asked somebody to do the killing. That's number one. Number two, these issues were never really brought up. The language that we're talking about now, there's such other person to engage in such conduct. None of that was ever addressed. I mean, the defendant's real claim, really his only claim, was that you shouldn't believe the informant in this case because he has a prior record. I mean, that's really all this court addressed, which isn't a very good claim. But that was his argument. None of these issues were addressed. Also, Stewart was decided before this court made clear that the categorical approach applies to 373. But all this being said is even if I go back to there was no aiding and abetting instruction given, and that's the best case scenario for them is an aiding and abetting theory, that he asked these people to aid and abet in the plot and there was never an aiding and abetting instruction. You could avoid all this statutory language or statutory interpretation just on that alone. Okay. Yeah, we'll give you a couple minutes for rebuttal. Thank you. Hey, please. The court, Daniel Zip on behalf of the United States. Just to be clear, our primary sufficiency argument is not based on aiding and abetting. It's based on the plain statutory language here, which the courts have interpreted as very broad. As Your Honor noted, it includes the term otherwise endeavors to persuade. So the jury could have found based on evidence here that Mr. Walthall intended that another person, fictitious or otherwise, commit these crimes and that he otherwise endeavored to persuade that person through the use of Rodriguez and through the use of his fictitious brother-in-law. At the end of the day, that's the most straightforward. Do we have cases that actually adopt that interpretation? I mean, Stewart and White, they don't really walk through the plain language very carefully on this. I'm not aware of any cases that talk about that specific endeavor to persuade language. I mean, there are other circuits that have described in Bucklew, the First Circuit, citing the Senate report, said that it's designed to cover any situation where a person seriously seeks to persuade another person to engage in criminal conduct, which is similar. And of course, as Your Honor's noted, in White, the Seventh Circuit held that it was sufficient, even posting juror information on an extremist website with no knowledge of who the actual solicitee would end up being, that ultimately the crime itself is the act of solicitation. And under the broad endeavors to persuade language, we believe that the evidence here was sufficient. Do you think there has to be any person involved other than the defendant? I mean, suppose the defendant is engaging with one of these social media accounts that's actually a bot, right? And he's chatting with the bot, and he asks, will you please murder somebody, right? And so there's no, like, he's not talking to a person, he's not talking about a person. I mean, he thinks he is, but there's no person. Do you think that would violate the statute? Under the statutory language, yes, that would seem to be comparable to what the Seventh Circuit addressed in White. I mean, the idea is the danger of the person endeavoring to have someone else commit a murder with the intent that that occurs, whether that's factually impossible, which is often in the case, is immaterial. So I'm interested in this question also because White talks about this being an inchoate crime, right? So it's what you're saying. All you have to do is put it out there. And that does seem very broad, but where would we, where would the line drawing occur if we were to say that something more than simply putting that into the universe, even if it's completely implausible, not directing any actual conduct in any way? You know, is there anything that we can look to to have some narrower parameters that we can draw some lines around what seems to me to be potentially too broad of an interpretation, the one that you're providing us today? Beyond the language of the statute, which says endeavors to persuade, I suppose there are factual situations where what someone is doing would not even rise to that level. What would that, what is that? It's hard to come up with an example. Perhaps posting something that's completely off the wall on a website that doesn't have an extremist background, or it's hard for me to come up with facts that wouldn't reach the statute here. But I think on, if we can go back to the facts of this case, clearly asking Rodriguez to hire, to have his brother-in-law hire someone, and to have that guy specifically commit these horrific acts against the judge, that is close enough to meet the statutory language, even if there's some conceivable outside evidence that wouldn't meet the standard. What's the significance of the under circumstances strongly corroborative of that intent clause? I mean, do you think that, you know, I suppose the more implausible the whole scenario is, the less likely it is that you'd be able to prove beyond a reasonable doubt that it really was strongly corroborative of a genuine intent. I think that's right, Your Honor, and this court has outlined certain factors that would play into that. How often it was repeated, whether there was specific information given that would allow the potential killer to locate the person, whether, how often it was repeated, whether a payment was offered. All of those are factors that sort of in an outside case that didn't meet the standard might both show that the defendant did not have the intent and that the actual endeavor to persuade didn't reach the level required by the statute. So you think that that sort of really comes into the prosecutorial discretion piece, whether these things were charged in the first instance at solicitation? I think that's certainly the first step, and then ultimately in an extreme case that if the prosecutor decided that it was worth going to, then the jury could decide whether the evidence was sufficient to show both that there was a legitimate endeavor to persuade and that the defendant had the intent to actually make it come to fruition. So I think prosecutorial discretion and ultimately the jury weighing the facts would be the sort of backstop. But there's not really a legal constraint. Right. I mean, it's the language of the statute says endeavors to persuade, so I don't know that there's a legal cutoff outside of the evidence of any given case. But it does say otherwise endeavors to persuade such other person. Doesn't such other person mean that there has to – he has to have some other person in mind? I guess not. I guess White does reject that argument, right, because White says you don't have to know. You don't have to know who. If you send this out to 100 people and you just assume one of them is going to do it, such other person is contained within that. But at least there was a solicitation to, in theory, each of those 100 people. Here he never solicited such other person. I guess he just otherwise endeavored to persuade such other person. That's correct. And such other person is not defined. Right. And it doesn't have to be a real person, as the court held in Stewart. Even a fictitious brother-in-law in that case was sufficient. But in Stewart you did have – it is true that in Stewart you did have a direct solicitation. Initially, right. So he initially went to whoever it was in prison and asked him to do it. But when the court addresses it at the end of the opinion, it lists the fictitious brother-in-law repeatedly as the person who was going to commit the murder. In your opinion, there was no error in the jury instruction at all. We're reviewing it for plain error. Your position is there was no error because the district court, when it said any person, that is totally consistent with your interpretation of the statute because of the otherwise endeavors to persuade such other person. That can be read as any – because the jury instruction said, or otherwise endeavored to persuade another person. It doesn't have to be an identifiable person, not even whether they're imaginary or not. It's not like you have to say, okay, John, go get James to commit the murder. As long as you say, John, go get someone to commit a murder, that's enough in all cases. I think that's right. And also, I mean, maybe it would have been better to say such other person in this instruction. It would have more closely mirrored the statute. But I think if you look at the way that it was phrased, it says endeavor to persuade another person to carry out a federal felony. So even the instructions given, the actual endeavor had to be for the person carrying it out and then the intent that that person engage in the crime of violence. So I don't think there's any way to read even the instructions that are given to suggest that the jury could have reached the conclusion that there was an intent for one person to commit the offense and a solicitation of a totally different person without the intent. But they all had to be on the same person that was actually committing the offense. What about the aiding and abetting? I mean, this does seem like an aiding and abetting crime. I mean, he didn't actually ever reach out to anybody to say, you commit the murder. He wanted somebody else to do it. I guess your argument is aiding and abetting is basically baked into the statute as is. I think our argument is we don't even need to go to aiding and abetting because the language of the statute is so broad. And all we're talking about is whether he endeavored to persuade someone at the sort of end of the chain, whether it's the Columbians or John's guy that he hires. Whether that constitutes aiding and abetting is sort of beside the point. The only reason we even included that is if, as the defense argued, there was a specific person-to-person solicitation required in the statute, then even then what this defendant did personally soliciting the brother-in-law to oversee the killing would potentially meet the statutory language under an aiding and abetting theory. And that's based on the sort of unusual language in the statute that says that it's never intense that another person engage in conduct constituting a felony such that overseeing a murder would be conduct constituting a felony under an aiding and abetting theory. But that goes to the – that's almost a different theory than we're talking about because then you're saying that John and Rodriguez themselves committed – in soliciting them, he committed it. But I thought your theory was the murder – I mean, we can't rely on that part of the theory, can we? All I'm explaining is that's why we were even talking about aiding and abetting in our brief was sort of the tail end of our argument, which was primarily based on endeavor to persuade. We said if you look at this barefoot decision from the Fourth Circuit, they seem to adopt that theory, that even if we have to show a solicitation person-to-person with Rodriguez and an undercover, that that could conceivably still meet the statutory language under an aiding and abetting theory. But we don't even need to get there given the broad language of the statute. Can you address a different aspect of the instructions, which is that the definition of – so the 373 refers to felony that has – that's a crime of violence. And the jury was instructed that a felony included killing or attempting to kill an officer or employee of the United States. Was the attempt part – was it proper to include that in the instructions? I mean, can you solicit attempted murder? So if you look closely at how the actual instructions were given, what the court said at the outset was, in this case, the United States alleges that the federal felony crimes of violence solicited were, one, murder of a federal employee, two, assault of a federal employee with a dangerous weapon. The court then provides the elements of each of those two, and then later in the instructions it includes that language that says, you are instructed as a matter of law that killing or attempting to kill an officer is a crime of violence. It's almost at the end it sort of lists, here are crimes that are crimes of violence. But there's nothing from that that would suggest that the jury would have somehow felt that it was able to convict under an attempt theory. I think you may have a very strong argument there, but just in the abstract, do you agree that it would have been better to leave out attempt? Yes. Okay. But, again, there was no objection made, and these were jointly proposed instructions. At the very least, if it could have been worded better, it's not a plain error, and it certainly wouldn't have affected the outcome of proceedings given the earlier instructions that I just described. Happy to address any other issues? If not, we would submit on the briefs. Okay. Thank you. We'll give you two minutes for rebuttal. I'm not sure I'm going to be able to get it all in in two minutes. Well, you better figure out a way. Okay. First of all, on Stewart, Stewart was decided before Flores-Figueroa by the Supreme Court. Flores-Figueroa says another person means an actual person, and so Stewart didn't have Flores-Figueroa when it was decided. So Stewart's not on point for a lot of reasons. I think the government is just focusing on this phrase, endeavors to persuade, and just ignoring the rest of the language in the statute. It says endeavors to persuade such other person to engage in such conduct. This endeavors to persuade, and somehow they're just saying, well, that somehow means that if you say anything to anybody, then it's good enough. A solicitation to solicit is not a crime of violence. So let me ask you the same question I asked your friend on the other side, which is how do we draw the line? Because I would give you that Stewart is different. Stewart, at least there's a request to this fictional brother-in-law, and here I think there's not really a dispute that there wasn't a request to any particular person because there was this request for them to arrange it instead. But how do we draw the line, which is why I find White so helpful, because in White I think the court just comes out and says this is really, really broad. It's an incoherent crime. As soon as you put it out there, that's enough. Well, I think the line is drawn with aiding and abetting, and they've just walked away from aiding and abetting. They've just considered it. It has to be a crime of violence under the categorical approach. Somebody has to have been solicited to actively participate in the crime of violence. That's what the plain language of the statute says. That's what this court held in Linehan. Soliciting a murder for hire, soliciting a solicitation to murder, Your Honor's question about didn't he, if you asked so-and-so to hire somebody to murder, that is not a crime of violence under the categorical approach. So it's just not endeavor to persuade. Like I asked somebody to pay somebody to do something. But why isn't it just endeavor to persuade? Well, and how do we get around that language? No, it's not, because you have to read it, endeavors to persuade such other person to engage in such conduct. If I go to person A and I say, hey, I want to get this bill passed in Congress, but I know if I go talk to them, they're not going to listen to me. I want you to go persuade Congress to pass the bill. I'm getting A to endeavor to persuade Congress to do something that I know I couldn't do. I mean, why doesn't that fit the statutory definition? I mean, that is endeavoring to persuade. That's endeavoring to persuade the other person to do something. I'm taking this out of a criminal context. I'm just saying in our common language, endeavoring to persuade somebody could happen a whole lot of different ways. Well, but you have to first you have to have the intent that another person, who are you intending to do this? I'm intending, and then you have to persuade such other person to engage in such conduct. You have to persuade the person. So I hear what you're saying. I understand what you're arguing, which is to say it's not just endeavors to persuade, but it's such other person to engage in such conduct. So now I think this is where Stewart becomes relevant. So Stewart is talking about a fictional person. Is that a such other person? And that's why I come back. Stewart was decided before Flores Figueroa. Flores Figueroa says another person means an actual person. And at least in Stewart, there was the defendant had been told there is this other person. There is this other actual person. Here, there is no actual person. It's a figment of his own imagination. Nobody has been asked to no actual person has been asked to engage in such conduct. No person has been asked to ask an actual person to engage in such conduct. And even that, soliciting a solicitation, is not a crime of violence. We are so far removed from this offense, and the government has now conceded they're not relying on aiding and abetting liability. I mean, they just did not prove the case. One final point. They were not jointly proposed instructions. The government proposed the instructions. There were no objections. The defendant's attorney did not say anything. We're still reviewing for plain error. Plain error, but not waiver. Got it. Thank you. Thank you to both counsel for your arguments in the case. The case is now submitted.
judges: NELSON, MILLER, DESAI